Estate of Jerome J. Hanauer, Lewis L. Strauss and Carrie H. Hanauer, Executors v. Commissioner.
Estate of Hanauer v. Commissioner
Docket No. 112274.
United States Tax Court
1943 Tax Ct. Memo LEXIS 36; 2 T.C.M. (CCH) 1070; T.C.M. (RIA) 43502; December 9, 1943
*36 Harry J. Rudick, Esq., Morton Pepper, Esq., 55 Liberty St., New York, N.Y., Morris L. Ernst, Esq., Samuel J. Schur, Esq., and Irving Mintz, Esq., 285 Madison Ave., New York, N.Y., for the petitioners. Conway Kitchen, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in estate tax in the amount of $492,867.16, based upon a number of adjustments which, except for one, are not in controversy here. The sole issue presented is whether the value of the corpus of a trust created by decedent's wife for his benefit is includible in decedent's gross estate under sections 302 (c) and 302 (d) of the Revenue Act of 1926, as amended. The estate tax return was filed with the collector for the fourteenth district of New York. Some of the facts have been stipulated. Findings of Fact Petitioners are the duly qualified and acting executors of the last will and testament of Jerome J. Hanauer, who died testate, a resident of New York State, on September 3, 1938, at the age of 63 years. Decedent left surviving him, as the sole members of his immediate family, his widow, Carrie H. Hanauer, age 61, his daughter, Alice H. Strauss, *37 age 35, his son-in-law, Lewis L. Strauss, age 42, and his grandson, Lewis Hanauer Strauss, age 14. In 1931, decedent was a senior partner in the firm of Kuhn, Loeb & Co., and had been a partner since 1912. Among the other partners were Mortimer L. Schiff and decedent's son-in-law, Lewis L. Strauss. On June 3, 1932, and in the State of New York, Jerome Hanauer executed a trust agreement whereby he transferred certain securities to trustees, in trust. The trustees were his wife and son-in-law, Lewis L. Strauss. During the continuance of the trust the entire net income was to be paid to his wife, for life, unless earlier terminated as provided in the trust agreement. On the death of the survivor of Alice H. Strauss and Lewis L. Strauss, the principal of the trust shall be paid to Carrie H. Hanauer, if living. The trust could be terminated in whole or in part, and the trust deed could be amended, altered or revised under the terms of the following clause: XVII. Notwithstanding anything to the contrary herein contained, this trust deed shall be in all respects subject to the following: Any or all of the terms of this instrument and the trust herein created may be amended, altered or *38 revised for any reason whatsoever, at any time or from time to time, upon the written consent of Carrie H. Hanauer and Alice Hanauer Strauss, or the survivor of them, duly executed and acknowledged; and the income payable hereunder pursuant to the terms and provisions of paragraph I may, upon like written consent, be divided and distributed, wholly or in part, otherwise than herein provided; and upon like written consent the trust herein created may be terminated wholly or in part. In the event of entire or partial termination, Carrie H. Hanauer and Alice Hanauer Strauss, or the survivor of them, shall have the right to designate the person or persons (including themselves or either of themselves if they so decide) to whom the Trustee shall pay outright the principal or portion of the principal released by such termination. Moreover, the survivor of Carrie H. Hanauer and Alice Hanauer Strauss shall also have the right to amend, alter or revise any of the terms of the trust by last will and testament. On June 3, 1932, the trust agreement was executed by Jerome Hanauer, Carrie H. Hanauer, Lewis L. Strauss, and Alice H. Strauss. The securities transferred to the trustees by the decedent *39 on June 3, 1932, under the above trust had a fair market value on that date of $751,132.45. On September 3, 1938, the date of decedent's death, the corpus of the trust consisted of $6,249.57, cash, and securities having a fair market value of $939,097.58. Prior to his death, on November 8, 1935, decedent had made a further transfer to the trust of securities then having a fair market value of $151,648.33. On the same day, June 3, 1932, Carrie H. Hanauer, decedent's wife, executed a trust agreement whereby she transferred certain securities and cash to trustees, in trust. The trustees were Jerome Hanauer and Lewis L. Strauss. The trust agreement was identical in all respects with the one executed by Jerome Hanauer on the same date except that the name of Carrie Hanauer appears in all places appropriate, as the grantor, and the name of Jerome J. Hanauer appears in all places as a beneficiary and trustee, just as the name of Carrie H. Hanauer appears in the trust agreement which Jerome Hanauer executed. During the continuance of the trust the entire net income was to be paid to Jerome Hanauer, for life, unless earlier terminated as provided in the trust agreement. Likewise, on the death *40 of the survivor of Alice H. Strauss and Lewis L. Strauss, the principal was to be paid to Jerome Hanauer, the decedent, if then living. The trust could be terminated in whole or in part, and the trust deed could be amended under the terms of clause XVII, which is identical with clause XVII, set forth above, in the trust executed on the same day by Jerome Hanauer, except that his name appears in each place where the name of Carrie H. Hanauer appears in that clause in his trust agreement. In other words, under the trust of Carrie H. Hanauer the trust could be amended, altered, revised, or terminated in whole or in part upon the written consent of Jerome Hanauer and Alice H. Strauss, his daughter, and upon entire or partial termination they could designate themselves or either of themselves as the person or persons to whom the trustees should pay the principal. The provisions of each trust were "crossed", as has been shown above, and the trusts were identical except for the substitution of the names of Jerome Hanauer and Carrie H. Hanauer to make the trusts cross. On June 3, 1932, the trust executed by Carrie H. Hanauer was also executed by Jerome Hanauer, Lewis L. Strauss, and Alice *41 H. Strauss. Also, on the same date there were transferred to the trustees of the Carrie H. Hanauer trust securities which then had a fair market value of $698,740.96 and cash in the sum of $25,000, the total value of the property so transferred being $723,740.96. On September 3, 1938, the date of decedent's death, the property in the trust consisted of cash in the sum of $641.39 and securities which then had a fair market value of $834,582.24, total, $835,223.63. No additional transfers of property to the above trust were made by or for Carrie H. Hanauer until December 23, 1938, which was after decedent's death, when she transferred to said trust 7 shares of Hanstra Corporation stock which then had a value of $28,135.36. The securities constituting the corpus of each trust were all readily marketable stocks and bonds widely held by investors. On June 3, 1932, the decedent was 56 and Carrie H. Hanauer was 55. They lived together from the time of their marriage until decedent's death. Neither of the trusts prior to decedent's death had been altered, revoked, amended, or revised. The transfers in trust were made at a time when decedent and Carrie H. Hanauer were in good health. *42 In each of the five years preceding the creation of her trust, Carrie H. Hanauer was worth not less than $1,250,000. Her net income, according to her income tax returns was $70,000 in 1927; $141,000 in 1928; $73,000 in 1929; $15,000 in 1930; and $37,000 in 1931. The net worth of Jerome Hanauer in 1932 was 5 million dollars. The trust agreements were prepared by Morris L. Ernst, a cousin of Carrie H. Hanauer, who was her and decedent's personal attorney. In the fall of 1931, decedent discussed his idea of creating a trust with Ernst, and Ernst mentioned to Carrie H. Hanauer that her husband was contemplating a trust. Again, in the spring of 1932, decedent discussed the trust with Ernst, and, in particular, the clauses of a trust. Ernst also had conversations with Carrie H. Hanauer. Ernst advised both that if they intended creating trusts they should not delay because gift tax legislation was pending in Congress and probably would be enacted. Ernst submitted drafts of clauses to decedent. As Carrie H. Hanauer was not business wise, Ernst obtained her instructions and told her that he was going to put the same technical clauses in her trust as in decedent's trust. When the trust agreements *43 had been drawn up in Ernst's office, he sent them down to decedent, leaving in each agreement a blank page, as a schedule, on which were to be written the descriptions of the properties to be conveyed in trust under each agreement. In the autumn of 1931, decedent served notice on his partners that he intended to retire from the partnership. He retired at the end of 1932. He discussed with his wife, his family, and his attorney problems affecting the management and protection of his personal fortune and that of his wife at or about the time he served his partners with notice of his intended retirement. Carrie H. Hanauer had substantial assets of her own. She relied upon the judgment of her husband and son-in-law in making investments. She maintained an account with Kuhn, Loeb & Co., which carried her investments. Also, she had a cash account with that firm. She had accounts in other banks. In the autumn of 1931 she knew, through Ernst's statements to her, that decedent thought of creating a trust. In 1932 she knew that decedent intended creating a trust in her favor. She asked Ernst if it would be a good idea for her to create a trust, too, and Ernst said he thought it would be *44 a good thing for her to do. Carrie H. Hanauer created her trust because her husband, the decedent, created his trust. Carrie H. Hanauer did not select the properties which were put in trust under her trust agreement. Decedent and Lewis L. Strauss selected the securities which were put into her trust. Jerome Hanauer and Carrie H. Hanauer did not consider the creation of their respective trusts and did not execute them independently and apart. Each created his respective trust in consideration of the other. In determining the deficiency in the estate tax due from the estate of decedent, respondent included in the gross estate the value at the date of decedent's death of the cash and securities in the Carrie H. Hanauer trust in the amount of $835,223.63. Opinion The single question in this proceeding is whether or not the cash and securities in the Carrie H. Hanauer trust should be included in the gross estate of decedent. Petitioners, in their capacity as executors of decedent's estate, contend that the respective trusts which were created by decedent and his wife on the same day were not created in consideration of each other. Respondent contends that the value of the Carrie *45 H. Hanauer trust should be included in the gross estate of the decedent under the rationale of ; certiorari denied, . Petitioners argue that the evidence submitted shows that the Jerome Hanauer trust and the Carrie Hanauer trust were not created in consideration of each other. Petitioners acknowledge that theirs is the burden of proving that the respective transfers in trust were not in consideration of each other and that they must overcome the prima facie correctness of the respondent's determination. Petitioners argue that the evidence shows that each individual independently and separately executed his trust for separate reasons, and that the only reason for the simultaneous creation of the trusts was the expected enactment of the gift tax statute. Petitioners contend that Jerome Hanauer created his trust because he had resolved to retire from the Kuhn, Loeb partnership; that Carrie H. Hanauer created her trust because she felt that a trust would be an effective means of "organizing her own wealth", and because the size of her family had become fixed and she *46 desired to make provision for her family. Finally, petitioners argue that "If they had intended the trusts to be in consideration of each other there would have been no question of the impact of a gift tax." Also, petitioners argue that the additional transfer of $151,000 of securities in 1935 by Jerome Hanauer to his trust is evidence that the trusts were not created in consideration of each other, in view of the lack of a corresponding addition of property to her trust by Carrie H. Hanauer. It has been said that certain facts are not conclusive in establishing that cross-trusts have been executed in consideration of each other; to wit, that the trusts have the same terms, that substantially the same amounts of property are transferred to each trust by each grantor upon the creation of the trusts, and that the trusts were executed at the same time. . On the other hand, evidence of any "concert of action" or any understanding or agreement between parties who create cross-trusts at the same time is strong evidence that such trusts are created in consideration of each other. Cf. ; *47 ; affirmed in part, . We take the view that in the matter of determining whether there was an understanding between individual grantors or any concert of action prior to the creation of cross-trusts, all of the circumstances and evidence must be weighed and technical niceties are not determinative. There is a natural inclination to skirt around frank admission of a pre-arranged agreement between parties in cases involving cross-trusts, so that every circumstance must be scrutinized, especially where the solidarity and closeness of the family relationship is present. "The law searches out the reality and is not concerned with the form". Here, the same attorney drafted the identical cross-trusts after Jerome Hanauer first consulted him and after he, the attorney, had "told" Carrie Hanauer what Jerome Hanauer was doing. Carrie Hanauer did not conceive the idea of creating a trust for the benefit of Jerome Hanauer free from the knowledge of Jerome Hanauer's conversations with their attorney that he intended creating a trust *48 for her benefit. Jerome Hanauer took up the idea first in the autumn of 1931. Then and not before, did any idea occur to Carrie H. Hanauer to create a trust for her husband's benefit. Jerome Hanauer did not carry out his plan of execution in 1931 but waited until June 3, 1932. If Carrie H. Hanauer's idea that she would create a trust was a thoroughly independent idea, there was nothing standing in the way of her proceeding forthwith in the autumn of 1931. She did not have any business affairs to adjust, as did her husband. Her property was, allegedly, wholly under her separate control. But she did not go ahead and create her trust. She testified that when she created her trust she knew that Jerome Hanauer was creating a trust for her benefit. Her chief reason for creating her trust was that anything "he" would do was just as good for her to do. Without resorting to any possible presumptions which could be drawn from the fact that the trusts were executed simultaneously, we do find in the fact that Carrie H. Hanauer's considerations paralleled those of Jerome Hanauer in exactness of time right down to the final drafting and execution of the trusts, strong evidence that her actions *49 were not independent of her husband's. The other strong evidence against a conclusion that her step was separate and independent of his is that she did not decide hereself what the amount of the corpus of her trust should be or what properties should comprise the corpus. The question is whether Jerome Hanauer created his trust for his wife's benefit in consideration of her creating a cross-trust for his benefit, so that in reality, he was the grantor of the trust nominally created by Carrie H. Hanauer. The facts referred to above indicate that such question should be answered in the affirmative because he started the general idea, he did not carry out the idea until his wife's trust was ready for execution, and he decided the matter of the amount and the properties of both trusts. Cf. , where the husband-grantor of a trust did not select the property to go into a trust created by the wife. Ernst testified that he sent the final drafts of the trust "down", and while the meaning of "down" was not specified, other evidence indicates that the meaning is "down" to the office of Jerome Hanauer at the Kuhn, Loeb & Co., because *50 Carrie Hanauer's securities were "carried" there and Jerome Hanauer and Lewis L. Strauss selected the securities of Carrie H. Hanauer that were to go into her trust. The only conclusion from all the evidence is that when Jerome Hanauer created his trust for his wife's benefit, he knew that she was creating a trust for his benefit. And so it cannot be said here, as was said in , that the husband-grantor of a trust had no knowledge of his wife's execution of a trust. Also, the record shows that Jerome Hanauer had discussed with his family, including his wife, in the autumn of 1931, problems affecting the management and protection of his and his wife's personal fortunes. Broad as such evidence is, we may not assume that the use of trusts by each person was not discussed. The close family relationship is not to be ignored. Petitioners argue that the sole motive of Jerome Hanauer in creating his trust was generated by his decision to retire from business. Consideration has been given to all of the testimony relating to the conditions which brought about his decision to retire, but all such evidence is immaterial. The important *51 thing is the way in which the trusts were created. There is no relation whatsoever to Jerome Hanauer's decision to retire and his execution of a cross-trust simultaneously with Carrie Hanauer's execution of a cross-trust. Therefore, all of such evidence contributes very little to petitioners' case. The decedent could have proceeded to put his property into a trust without any relation to his wife's arrangements. He did not do so. It is concluded that Jerome Hanauer and Carrie H. Hanauer did not create their respective trusts independently of each other and without any prior concert of action or understanding. In view of the entire evidence, it is not determinative of the question that each party took into consideration the expected enactment of the gift tax. Also, it is not determinative that Jerome Hanauer made additional transfers of property to the Jerome Hanauer trust, after the creation of that trust, and that Carrie H. Hanauer did not do likewise with respect to her trust. The question is whether the trusts were created in consideration of each other. Respondent points out that in , the evidence *52 showed that when Fish created his trust he transferred 10,000 shares of stock in trust, having a value of about $1,000,000, and, later, he added securities having a value of approximately $500,000 to his trust. His wife did not make additions to the corpus of her cross-trust. The addition of property to the trust was deemed immaterial in the Fish case. We take the same view here. It is concluded that the two trusts were clearly reciprocal and in consideration of each other; that the property of Carrie H. Hanauer upon the creation of her trust was, in effect, exchanged for the property of Jerome Hanauer received by the trustees from him at the time of the creation of his trust; and "that the rights each received under the trust created by the other were of the unrestricted character not essentially to be distinguished from complete ownership", It is held, therefore, that for estate tax purposes decedent should be regarded as the creator of the trust of which his wife was the nominal grantor. Respondent is sustained. The Joint Resolution of March 3, 1931, ante-dated the creation of the two trusts here in question. *53 There is no question, therefore, of the applicability of sections 302 (c) and (d) of the Revenue Act of 1926, as amended. Viewing the decedent as the grantor of the Carrie H. Hanauer trust, under the conclusions reached above, he had reserved to himself for life the resulting income of the trust. Also, he reserved the right, in conjunction with his daughter, to alter, amend, revoke, or terminate the trust. ; and there was a possibility of reversion to the decedent if he survived his daughter and grandson. . Decision will be entered under Rule 50.